# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| CHARLES MARLATT, JR., STANLEY BRUCE, ROBERT HORNBERGER, JEFFREY COOK, and LOTUS SUMMIT TRADING LLC, on behalf of themselves and all others similarly situated, | Case No. 2:17-CV-00096 **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| FCA US LLC; and FIAT CHRYSLER AUTOMOBILES N.V., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Charles Marlatt, Jr., Stanley Bruce, Robert Hornberger, Jeffrey Cook, and Lotus Summit Trading LLC, individually and on behalf of all others similarly situated, allege the following based on personal knowledge, investigation of counsel, and belief:

## NATURE OF THE CASE

1. This is a class action for compensatory damages, injunctive relief, and other legal and equitable remedies arising from egregious misconduct perpetuated on consumers by Defendants FCA US LLC and Fiat Chrysler Automobiles N.V. Defendants have advertised and sold—and continue to advertise and sell—diesel-powered vehicles as high performing, fuel efficient, and producing clean, environmentally friendly emissions. But none of this is true because Defendants have deliberately equipped their vehicles with software that is designed to deceive the Environmental Protection Agency ("EPA"), state regulators, and consumers. As a result, Defendants have sold and continue to sell inherently defective vehicles in violation of the law and in violation of the many duties Defendants owe to consumers.

2.      Diesel passenger vehicles have long been unpopular in the United States because of their reputation as dirty, smelly, and highly polluting.  Diesel engines produce more nitrogen compounds, hydrocarbons, carbon monoxide, and carbon dioxide due to their higher compression and the less refined nature of diesel fuel, as compared to gasoline engines.

3.      Beginning in the mid-2000s, car manufacturers began to market and sell new generations of diesel-engine vehicles as environmentally friendly, fuel efficient, and high performing alternatives to gas-powered and hybrid gas-electric vehicles.  Manufacturers promoted new diesel technology as achieving near-zero emissions, and they secured certificates of emissions compliance from United States regulators, a prerequisite to lawful sale.

4.      Among these manufacturers, Defendants promoted and sold a 3.0L EcoDiesel V6 Engine as a "marvel of modern engineering" because of its ability to deliver powerful towing capacity, optimal fuel efficiency, and reduced emissions. Beginning in 2013, FCA promoted these diesel engines as eco-friendly, making them available on 2014 to 2016 model year Dodge Ram and Jeep Grand Cherokee brand vehicles ("Class Vehicles").

5.      But FCA's EcoDiesel vehicles are anything but "green." These vehicles contain hidden software that, according to federal regulators, reduces the effectiveness of the emissions systems in real-world driving. In other words, when the vehicles are actually driven (as opposed to being tested), they emit unlawful amounts of nitrogen oxides—a pollutant that contributes to smog and serious health problems and that has been linked to cancer.

6.      Without this illegal software, Defendants would not have been able to sell a single "eco" vehicle in the United States.  But Defendants' scheme worked for years, allowing Defendants to place 100,000 defective vehicles on America's roads and to deceive consumers

who would not have purchased these vehicles but for Defendants' representations about clean diesel technology.

7.     Plaintiffs bring this suit on behalf of themselves and proposed state classes to obtain damages (both actual and punitive) and restitution, as well as to enjoin Defendants from continuing to deceive consumers.

**PARTIES**

8.     Plaintiff Charles Maralatt, Jr. is a citizen and resident of Groveport, Ohio, located in Franklin County.

9.     Plaintiff Stanley Bruce is a citizen and resident of Los Angeles, California, located in Los Angeles County.

10.     Plaintiff Robert Hornberger is a citizen and resident of Hauppauge, New York, located in Suffolk County.

11.     Plaintiff Jeffrey Cook is a citizen and resident of Pinch, West Virginia, located in Kanawha County.

12.     Plaintiff Lotus Summit Trading LLC is a limit liability company that has its principal place of business in Monument, Colorado, located in El Paso County.

13.     Defendant FCA US LLC is a limited liability company under Delaware law. Its principal place of business and headquarters is located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. FCA US LLC manufacturers motor vehicles and is a licensed distributor of new and previously untitled Chrysler-brand vehicles, including Dodge, Ram, Jeep, and Chrysler. FCA US LLC is one of the largest American automakers, and engages in commerce throughout the United States, including in Ohio, California, New York, Virginia, and Colorado, by advertising, distributing, and selling motor vehicles.

14.     Defendant Fiat Chrysler Automobiles N.V. is a Dutch corporation headquartered in London, United Kingdom.  Fiat Chrysler Automobiles N.V. is the corporate parent of FCA US LLC and the seventh largest automaker in the world.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which Defendants are citizens of different jurisdictions from members of the proposed class, including Plaintiffs.  None of the exceptions under 28 U.S.C. § 1332(d) apply to the instant action.

16.     Defendants are subject to the jurisdiction of this Court pursuant to Federal Rule of Civil Procedure 4 and 28 U.S.C. § 115(b)(2) because they are registered to do business in, and do business in, this District.  This Court may exercise jurisdiction over Defendants because they are registered to conduct business in Ohio; have sufficient minimum contacts in Ohio; and intentionally avail themselves of the markets within Ohio through the promotion, sale, marketing, and distribution of their vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary.

17.     Venue is proper in this District under 28 U.S.C. § 1391 and S.D. Ohio Civ. R. 82.1(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and because Defendants conduct substantial business in this District, including marketing, advertising, selling, and leasing Class Vehicles.

## SUBSTANTIVE ALLEGATIONS

### So-Called Eco or Clean Diesel

18.     Diesel engines first became common in American passenger vehicles in the 1970s and 1980s, but gained a reputation as "dirty" because they emitted noxious gases and particulate matter.  As diesel engines need to be more robust than comparable gasoline engines, diesel-powered vehicles also cost more to produce and commanded a premium price.  These factors, combined with increasingly stringent emissions regulations, caused diesel passenger vehicles to become increasingly unpopular in the American market.

19.     In the early to mid-2000s, California passed new emission standards strictly regulating exhaust emissions, including oxides of nitrogen (NOx).  This effectively precluded the sale of diesel passenger vehicles in California because the nature of diesel engines inherently makes NOx emissions a particularly difficult problem to resolve.  Facing the implementation of similarly stringent federal regulations, car manufacturers began to research and develop a new generation of diesel engine that, according to the manufacturers, were environmentally friendly, fuel efficient, high performing, and satisfied federal and California emissions regulations.

### Diesel Engine Emissions

20.     The diesel internal combustion engine differs from the typical gasoline powered engine in that it uses highly compressed hot air to ignite the fuel rather than using a spark plug.  As in a gasoline engine, the burning fuel rapidly expands, moving the piston, and transmitting power to the crankshaft.

21.     Emissions have often been an obstacle for diesel vehicles.  Although the use of cleaner fuels and new technologies has improved certain types of emissions problems, other problems remain.  As a result of their high combustion and compression pressures, diesel engines

typically produce high levels of NOx in the combustion process.

## Oxides of Nitrogen

22.　　Oxides of nitrogen (NOx) are a highly reactive group of gases that the EPA and other government agencies have found to create environmental problems and public health hazards, including smog, ground-level ozone, and acid rain.  For example, direct exposure to NOx can cause respiratory problems, such as lung irritation, bronchitis, or pneumonia.  When NOx combines with sunlight, it may create photochemical smog, which appears as a brownish ground-level haze and causes chest pain, shortness of breath, coughing and wheezing, and eye irritation.  NOx is one of the main ingredients involved in the formation of ground-level ozone.  Breathing ozone can also trigger a variety of health problems including chest pain, coughing, throat irritation, and congestion and can worsen bronchitis, emphysema, and asthma.  Children are at the greatest risk of experiencing negative health impacts from exposure to ozone.  When mixed with rain in the atmosphere, NOx can create nitric acid or acid rain.  NOx is also a contributor to global warming.

## Regulatory Framework

23.　　Because of the serious hazards created by NOx emissions, both the EPA and the California Air Resources Board ("CARB") have regulated NOx.

24.　　The federal Clean Air Act prohibits the sale of any vehicle in the United States that does not comply with emissions regulations set by the EPA.  42 U.S.C. § 7522.  The current regulations, Tier 2, were implemented by the EPA between 2004 and 2009, and apply to all light-duty vehicles regardless of the fuel that they use.  The Tier 2 regulations include certification levels of different levels of stringency, called certification bins.  Defendants chose to certify Class Vehicles to the Tier 2, Bin 5 standard, which has a maximum NOx level of .05

g/mi for a vehicle's intermediate life (5 years/50,000 miles) and .07 g/mi for a vehicle's full

useful life (10 years/120,000 miles). 40 C.F.R. § 86.1811-04(c). In addition, a manufacturer's

fleet average of NOx for any given model year must be under .07 g/mi. *Id.* at § 86.1811-04(d).

25.      On the state level, CARB adopted Low-Emissions Vehicle (LEV) II emission

standards that generally became applicable in the 2004 model year. *See* The California Low-

Emission Vehicle Regulations, Cal. Code. Regs. Tit. 13 § 1961. Under the LEV II standard,

NOx emissions were significantly tightened and required light-duty passenger vehicles

(including Class Vehicles) to emit no more than .05 g/mi initially, and no more than .07 g/mi

over their useful life. Cal. Code. Regs. Tit. 13 § 1961.

26.      To comply with EPA and CARB regulations concerning NOx, vehicle

manufacturers use a variety of exhaust treatment systems to control NOx emissions. Exhaust gas

recirculation (EGR) systems, used in Defendants' diesel vehicles, reintroduce some exhaust

gases into the engine's intake. This lowers the peak temperature of combustion, which reduces

the chance of NOx forming. In Defendants' diesel vehicles, EGR is the primary mechanism for

reducing NOx emissions.

27.      Defendants' diesel vehicles also utilize selective catalytic reduction systems

(SCR). SCR is an aftertreatment system that is separate from the diesel engine. This process

injects urea solutions, often called diesel exhaust fluid (DEF), into the exhaust stream to remove

oxygen from NOx, converting it into nitrogen (N2) and water. The DEF must be refilled on a

regular basis for the SCR system to function effectively.

28.      Defeat devices can operate to disable the EGR or SCR systems, or reduce their

ability to function. When this occurs, NOx emissions increase significantly.

29.      Federal and state regulations require manufacturers to apply for certifications that

their vehicles meet applicable emission standards. 40 C.F.R. § 86.1843-01. The federal application must include a list of all Auxiliary Emission Control Devices ("AECDs") installed on the vehicle. *Id.* at § 86.1844-01(d)(11). An AECD is defined as "any element of design which senses . . . any . . . parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." *Id.* at § 86.1803-01. The federal application must also contain a detailed justification for each AECD that results in a reduction in the effectiveness of the emission control system, and a rationale for why it is not a "defeat device." *Id.* at § 86.1844-01(d)(11).

30. Defeat devices are expressly forbidden by federal regulations. *See* EPA, *Advisory Circular Number 24: Prohibition on use of Emission Control Defeat Device* (Dec. 11, 1972); *see also* 40 C.F.R. §§ 86-1809-01, 86-1809-10, 86-1809-12. Stated simply, a defeat device is hardware or software that "defeats" the vehicle's emission controls during normal vehicle operation—enabling the vehicle to produce low emissions during emissions testing, but not during normal operation. The Clean Air Act makes it a violation for any person to sell, manufacture, or install any component in a motor vehicle "where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle . . . in compliance with the regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." Clean Air Act, 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854012(a)(3)(ii). Similarly, the EPA has specifically recognized that electronic control systems that affect the emission control system's performance may be defeat devices. *See* EPA, *Advisory Circular Number 24-2: Prohibition on Emission Control Defeat Devices – Optional Objective Criteria* (Dec. 6, 1978).

31.     Every vehicle sold in the United States must be covered by Certificate of Conformity from the EPA. 40 C.F.R. § 86.1843-01. However, vehicles are only covered by a Certificate of Conformity if they are sold as described in the manufacturer's application for certification. *Id.* at §86.1848-10(c)(6). States impose similar schemes. For example, auto manufacturers must be certified by CARB in order to sell vehicles in California. Motor vehicles equipped with defeat devices, which reduce the effectiveness of the emission control system during normal driving conditions, cannot be certified. Both federal and state regulations mandate that manufacturers include certain emissions-related labels on the vehicles they sell. First, the regulations require that an emissions label titled "Vehicle Emission Control Information" be placed under the hood or in the engine compartment and contain "an unconditional statement of compliance" with federal and California emissions regulations. 40 C.F.R. § 86.1807-01; Cal. Code. Regs. Tit. 13 § 1965. Auto manufacturers must affix this label to every motor vehicle that they intend to sell to the public in the United States subject to the applicable emissions standards.

### EPA and CARB Investigation

32.     On September 18, 2015, the EPA issued a Notice of Violation ("NOV") to Volkswagen Group of America, another one of the world's largest auto manufacturers. The NOV details how Volkswagen installed sophisticated software in Volkswagen and Audi diesel vehicles that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the tests. At all other times that the vehicle is in operation, the emissions controls are deactivated, permitting pollution to be freely released into the environment at levels that far exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined in the Clean Air Act.

33.     Following the Volkswagen defeat device scandal, the EPA announced an expansion of its standard vehicle emission testing procedure to include "driving cycles and conditions that may reasonably be expected to be encountered in normal operation and use, for the purposes of investigating a potential defeat device." *EPA Conducted Confirmatory Testing (Sept. 25, 2015)*, https://www.epa.gov/sites/production/files/2015-10/documents/cd-mfr-guid-ltr-2015-09-25.pdf.  This additional testing led to the discovery of similar devices in Defendants' vehicles.

34.     On January 12, 2017, the EPA and CARB issued notices of violation to Fiat Chrysler Automobiles N.V. and FCA US LLC for failing to disclose AECDs in over 100,000 vehicles.  EPA testing revealed that the undisclosed AECDs "cause the vehicle to perform differently when the vehicle is being tested for compliance with the EPA emission standards … than in normal operation and use."  As a result, these software programs cause the vehicles to emit NOx in excess of the legal limit under normal driving conditions.

35.     The EPA notice identifies eight specific undisclosed AECDs in the affected vehicles:

> a.      AECD #1 (Full EGR Shut-Off at Highway Speed);
>
> b.      AECD #2 (Reduced EGR with Increasing Vehicle Speed);
>
> c.      AECD #3 (EGR Shut-Off for Exhaust Valve Cleaning);
>
> d.      AECD #4 (Diesel Exhaust Fluid Dosing Disablement during SCR Adaptation);
>
> e.      AECD #5 (EGR Reduction due to Modeled Engine Temperature);
>
> f.      AECD #6 (SCR Catalyst Warm-Up Disablement);
>
> g.      AECD #7 (Alternative SCR Dosing Modes); and

       h.     AECD #8 (Use of Load Governor to Delay Ammonia Refill of SCR Catalyst).

36.     The EPA and CARB have stated that their investigations are continuing and that additional notices of violation may be forthcoming.

## FCA EcoDiesel Vehicles

37.     This action involves the Dodge Ram 1500 pickup truck, model years 2014 to 2016, and the Jeep Grand Cherokee SUV, model years 2014 to 2016, equipped with FCA's 3.0-liter EcoDiesel engine ("Class Vehicles").

| Model Year | Make and Model(s) | 50 State Volume |
|---|---|---|
| 2014 | FCA Dodge Ram 1500 | 14,083 |
| 2014 | FCA Jeep Grand Cherokee | 14,652 |
| 2015 | FCA Dodge Ram 1500 | 31,984 |
| 2015 | FCA Jeep Grand Cherokee | 8,421 |
| 2016 | FCA Dodge Ram 1500 | 32,219 (projected) |
| 2016 | FCA Jeep Grand Cherokee | 2,469 (projected) |

Source: EPA Notice of Violation to Fiat and Chrysler, *available at* https://www.epa.gov/sites/production/files/2017-01/documents/fca-caa-nov-2017-01-12.pdf

38.     In 2013, Defendants began an ad campaign for their new "EcoDiesel" engine. The ad campaign targeted consumers "who want to drive an efficient, environmentally-friendly truck without sacrificing capability or performance."[1]

39.     Defendants marketed and sold Class Vehicles from 2013 through the present day.

40.     Defendants market the Dodge Ram 1500 as "the industry's only half-ton pickup with an available diesel engine." Ram 1500 trucks equipped with the EcoDiesel engine are what

---

[1] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/ (last visited Jan. 21, 2017).

FCA designates its "High Fuel Efficiency" ("HFE") model. Defendants claims that the Ram 1500 HFE produces lower $CO_2$ emissions while delivering the "best fuel economy of any full-size pickup"—up to 29 miles per gallon ("MPG") on the highway. Defendants also advertises that the Ram 1500 HFE produces 240 horsepower and 420 pound-feet of torque, allowing the truck to tow up to 7,920 pounds.



41.     Defendants market the Jeep Grand Cherokee EcoDiesel as having "Best-in-Class" fuel economy and towing capability, and as "environmentally friendly."  The Jeep gets up to 30 MPG on the highway and has a 730-mile range.  The Jeep also produces 240 horsepower and 420 pound-feet of torque, allowing it to tow up to 7,400 pounds.



42.     The Ram 3.0L EcoDiesel V6 engine is composed of compacted graphite iron and aluminum twin-cam heads.  FCA claims that this EcoDiesel engine has "advanced clean diesel technology" and "B20 biodiesel capability."  It also comes equipped with "Active Air®" Grille Shutters, a diesel oxidation catalyst, diesel particulate filter, and selective catalyst reduction—features that ensure the vehicle is "emissions-complaint in all 50 states," according to Defendants.  Defendants provide an "Emissions Warranty" in the owner's manual of all Class Vehicles, guaranteeing that the vehicle complies with all applicable emissions regulations.



43.     The Jeep 3.0L EcoDiesel V6 engine is also composed of compacted graphite iron and aluminum twin-cam heads.  The engine is further equipped with "MultiJet® II" injectors that manage up to eight injections per combustion event.  Defendants claim that the engine's 29,000-psi pressure is "unmatched by any solenoid-based system," which allows it to deliver quieter performance, optimal fuel efficiency, and reduced emissions.



3.0L EcoDiesel V6 Engine

Awe-inspiring performance combined with Best-in-Class fuel economy❻–that's what the 3.0L EcoDiesel V6 engine gives you. A marvel of modern engineering, with a block made of compacted graphite iron and aluminum twin-cam heads, the engine delivers quiet, clean-diesel technology with low $CO_2$ emissions.

44.     Defendants further boast that the engine's "unique 1-4-2-5-3-6 firing order and 60-degree cylinder banks drastically help reduce vibration."  In fact, "[t]he engine design is so smooth that the engineers were able to remove power-robbing balance shafts altogether."  The engine also features "swirl-control intake ports and a water-cooled variable geometry

turbocharger to help cut turbo lag and improve acceleration."[2]

45.    According to Defendants' advertisements, the Jeep EcoDiesel engine is equipped with clean-diesel technology that delivers low $CO_2$ emissions.  Ads claim that the engine "increases range and improves power—all while leaving little trace of being there."  As with the Ram 1500 HFE, Defendants tout the savings that the Jeep EcoDiesel engine brings to the consumer: allowing owners to "save money at the pump," and to have "fewer tune-ups."[3]  Defendants' webpages for each vehicle feature a "Savings Calculator," that demonstrates these purported savings:



<hr/>

[2] *EcoDiesel Undiscovered*, Jeep, http://www.jeep.com/en/jeep-capabilities/eco-diesel-calculator/ (last visited Jan. 28, 2017).

[3] *Id.*

46.    While Defendants proclaim the consumer savings of the EcoDiesel engine, this feature does not come cheap.  For example, the EcoDiesel option adds $4,500 to the overall price of the 2014 Jeep Grand Cherokee[4] and adds between $3,120 and $4,960 to the cost of the 2015 Ram 1500.[5]

## FCA's Misconduct Has Injured and Will Continue to Injure Class Members

47.    The savings advertised and promoted by Defendants are illusory because the Class Vehicles would not reach the level of fuel efficiency or power advertised had Defendants manufactured them in compliance with EPA regulations.

48.    Once Defendants are forced to modify the Class Vehicles to comply with emissions standards, Plaintiffs and Class members will experience significantly diminished torque, power, and performance.  Plaintiffs and Class members will be harmed because their vehicles will no longer perform as advertised and warranted.

49.    Additionally, Class members' vehicles will suffer from a significant diminution in value by being made EPA compliant, because not only did Class members overpay for their vehicles, but they also will be forced to pay much more to fuel their less fuel efficient vehicles.

50.    Owners of vehicles equipped with defeat devices have suffered loss of money or property because of Defendants' unfair, deceptive, and/or fraudulent business practices and their failure to disclose the true emissions of the vehicles.

---

[4] *2014 Jeep Grand Cherokee EcoDiesel V-6*, Car and Driver, http://www.caranddriver.com/reviews/2014-jeep-grand-cherokee-ecodiesel-v-6-first-drive-review (last visited Jan. 21, 2017).

[5] *2015 Ram 1500 EcoDiesel 4x4*, Car and Driver, http://www.caranddriver.com/reviews/2015-ram-1500-4x4-ecodiesel-4x4-test-review (last visited Jan. 21, 2017).

51.     Had Plaintiffs and the Class members known that Defendants' material representations that these vehicles are environmentally friendly, "eco," or "clean diesel" were false or misleading, and had they known of the existence of the defeat device on their vehicle at the time they purchased or leased them, they would not have purchased or leased these vehicles, or they would have paid substantially less than they did.  Even if Defendants recall the defeat device vehicles to make them compliant with EPA standards, the "fix" will degrade the engine performance of the vehicles and Plaintiffs and Class members will be forced to spend more on fuel and will not receive the advertised performance of their vehicles.  The recalled vehicles will be worth less in the used-vehicle marketplace because of their decrease in performance and efficiency, which means that owners of these vehicles will not be able to recoup the expected value of these vehicles in the future.

## PLAINTIFFS' SPECIFIC FACTUAL ALLEGATIONS

### Ohio Plaintiff Charles Marlatt Jr.

52.     Plaintiff Charles Marlatt, Jr. is the original owner of a 2015 Jeep Grand Cherokee SUV, VIN # 1C4RJFM4FC105611, which is equipped with Fiat Chrysler's 3.0-liter EcoDiesel engine.  He purchased this vehicle on or around August 17, 2015, from an authorized FCA dealer, Herrnstein Chrysler Inc., 133 Marietta Road, Chillicothe, Ohio 45601.

53.     Plaintiff Marlatt purchased his vehicle in part because it was fuel efficient, had good performance, and produced low emissions.  He knew that he would place a significant number of miles on his vehicle for work-related travel, so he wanted an eco-friendly, fuel efficient vehicle.  Before purchasing his vehicle, Plaintiff reviewed its product labels and supporting documentation.  These materials did not disclose that the vehicle did not comply with applicable emissions regulations or that Defendants had installed a defeat device in the vehicle.

The dealership salesperson who sold Marlatt his vehicle specifically told Marlatt that the vehicle he ultimately purchased met the higher California emissions standards.  The salesperson told him that two classes of vehicles, one for California and another for the rest of the country, were unnecessary for this vehicle because the vehicle met the higher California standards.  Marlatt also learned that while the EcoDiesel had the lowest horsepower of all the engines available, it purportedly had the highest torque.  Plaintiff chose to purchase his vehicle instead of competing products in part based on all these representations. Plaintiff reasonably believed at the point of sale that his vehicle complied with applicable emissions standards and did not contain a defeat device.

54.    Plaintiff Marlatt is concerned that any future repairs offered by Defendants will add to his fuel costs based upon decreased mileage and also cause diminished performance.  He is also concerned that his vehicle has lost value regardless of whether he opts to have his vehicle repaired. Plaintiff Marlatt would not have purchased this vehicle if he had known that the emissions were much higher than advertised, that the vehicle was not "clean" or "Eco" friendly, that it did not comply with federal or state emissions standards, and that it would not maintain the advertised fuel efficiency or level of performance during its useful life.

### California Plaintiff Stanley Bruce

55.    Plaintiff Stanley Bruce bought a new 2014 Jeep Grand Cherokee with a 3.0L EcoDiesel V6 engine from Alhambra Chrysler Dodge Jeep Ram, an authorized FCA dealer in Alhambra, California, in December 2014.

56.    Plaintiff purchased his vehicle in part because it was fuel efficient, had good performance, and produced low emissions.  Before purchasing his vehicle, Plaintiff reviewed its product labels and supporting documentation. These materials did not disclose that the vehicle

did not comply with applicable emissions regulations or that Defendants had installed a defeat device in the vehicle. Plaintiff chose to purchase his vehicle instead of competing products in part based on these representations. Plaintiff reasonably believed at the point of sale that his vehicle complied with applicable emissions standards and did not contain a defeat device.

57. Plaintiff Bruce is concerned that any future repairs offered by Defendants will add to his fuel costs based upon decreased mileage and also cause diminished performance. He is also concerned that his vehicle has lost value regardless of whether he opts to have his vehicle repaired. Plaintiff Bruce would not have purchased his vehicle or would have paid less for it had Defendants disclosed that the emissions were much higher than advertised, that the vehicle was not "clean" or "Eco" friendly, that it did not comply with federal or state emissions standards, and that it would not maintain the advertised fuel efficiency or level of performance during its useful life.

## New York Plaintiff Robert Hornberger

58. Plaintiff Robert Hornberger bought a pre-owned 2014 Jeep Grand Cherokee with a 3.0L EcoDiesel V6 engine from Brown's Jeep Chrysler Dodge Ram, an authorized FCA dealer in Patchogue, New York, in approximately May 2016.

59. Plaintiff purchased his vehicle in part because it was fuel efficient, had good performance, and produced low emissions. Before purchasing his vehicle, Plaintiff reviewed its product labels and supporting documentation. These materials did not disclose that the vehicle did not comply with applicable emissions regulations or that Defendants had installed a defeat device in the vehicle. Plaintiff chose to purchase his vehicle instead of competing products in part based on these representations. Plaintiff reasonably believed at the point of sale that his vehicle complied with applicable emissions standards and did not contain a defeat device.

60.     Plaintiff Hornberger is concerned that any future repairs offered by Defendants will add to his fuel costs based upon decreased mileage and also cause diminished performance. He is also concerned that his vehicle has lost value regardless of whether he opts to have his vehicle repaired. Plaintiff Hornberger would not have purchased his vehicle or would have paid less for it had Defendants disclosed that the emissions were much higher than advertised, that the vehicle was not "clean" or "Eco" friendly, that it did not comply with federal or state emissions standards, and that it would not maintain the advertised fuel efficiency or level of performance during its useful life.

### Virginia Plaintiff Jeffrey Cook

61.     Plaintiff Jeffrey Cook bought a lightly used 2015 Dodge Ram 1500 with a 3.0L EcoDiesel V6 engine from Auto World of Big Stone Gap, an authorized FCA dealer in Big Stone Gap, Virginia, in July 2016.

62.     Plaintiff purchased his vehicle in part because it was fuel efficient, had good performance, and produced low emissions.  Before purchasing his vehicle, Plaintiff reviewed its product labels and supporting documentation. These materials did not disclose that the vehicle did not comply with applicable emissions regulations or that Defendants had installed a defeat device in the vehicle.  Plaintiff chose to purchase his vehicle instead of competing products in part based on these representations. Plaintiff reasonably believed at the point of sale that his vehicle complied with applicable emissions standards and did not contain a defeat device.

63.     Plaintiff Cook is concerned that any future repairs offered by Defendants will add to his fuel costs based upon decreased mileage and also cause diminished performance.  He is also concerned that his vehicle has lost value regardless of whether he opts to have his vehicle repaired. Plaintiff Cook would not have purchased his vehicle or would have paid less for it had

Defendants disclosed that the emissions were much higher than advertised, that the vehicle was not "clean" or "Eco" friendly, that it did not comply with federal or state emissions standards, and that it would not maintain the advertised fuel efficiency or level of performance during its useful life.

### Colorado Plaintiff Lotus Summit Trading LLC

64.     Plaintiff Lotus Summit Trading LLC bought a new 2015 Dodge Ram 1500 with a 3.0L EcoDiesel V6 engine from Medved Chrysler Dodge Jeep Ram, an authorized FCA dealer in Castle Rock, Colorado, in August 2015.

65.     Plaintiff purchased its vehicle in part because it was fuel efficient, had good performance, and produced low emissions.  Before purchasing the vehicle, Plaintiff reviewed its product labels and supporting documentation. These materials did not disclose that the vehicle did not comply with applicable emissions regulations or that Defendants had installed a defeat device in the vehicle.  Plaintiff chose to purchase the vehicle instead of competing products in part based on these representations.  Plaintiff reasonably believed at the point of sale that the vehicle complied with applicable emissions standards and did not contain a defeat device.

66.     Plaintiff Lotus Summit Trading LLC is concerned that any future repairs offered by Defendants will add to the vehicle's fuel costs based upon decreased mileage and also cause diminished performance.  Plaintiff is also concerned that the vehicle has lost value regardless of whether Plaintiff opts to have the vehicle repaired. Plaintiff would not have purchased his vehicle or would have paid less for it had Defendants disclosed that the emissions were much higher than advertised, that the vehicle was not "clean" or "Eco" friendly, that it did not comply with federal or state emissions standards, and that it would not maintain the advertised fuel efficiency or level of performance during its useful life.

## CLASS ACTION ALLEGATIONS

67.    "Class Vehicles" includes the 3.0L diesel versions of the following vehicles:

    a.    2014-2016 Dodge Ram 1500; and

    b.    2014-2016 Jeep Grand Cherokee.

68.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following proposed classes of persons, initially defined as:

**Nationwide Class:**

All persons or entities in the United States who are current or former owners and/or lessees      of a Class Vehicle.

**Ohio Class:**

All current and former owners or lessees of a Class Vehicle in Ohio.

**California Class:**

All current and former owners or lessees of a Class Vehicle in California.

**New York Class:**

All current and former owners or lessees of a Class Vehicle in New York.

**Virginia Class:**

All current and former owners or lessees of a Class Vehicle in Virginia.

**Colorado Class:**

All current and former owners or lessees of a Class Vehicle in Colorado.

69.    Excluded from the proposed classes are individuals who have personal injury claims resulting from the defeat device in the Class Vehicles.  Also excluded from the proposed classes are: Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which

Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; all persons who make a timely election to be excluded from the class(es); governmental entities; and the judge to whom this case is assigned and any member of his or her immediate family.  Plaintiffs reserve the right to revise the Class definitions based upon information learned through discovery.

70.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis as would be used to prove those elements individual actions alleging the same claim.

71.     This action has been brought and may properly be maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

72.     <u>Numerosity</u>.  Defendants have sold hundreds of thousands of Class Vehicles, such that there are far too many class members to be practically joined in a single action.  Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, or published notice.

73.     <u>Existence and predominance of common questions</u>.  Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members.  These common questions include:

      a.      Whether Defendants installed a defeat device in Class Vehicles;

      b.      Whether Class Vehicles fail to comply with the applicable federal and state emissions regulations as a result of the defeat device;

      c.      Whether Defendants had a duty to disclose the existence of the defeat device and its consequences to its customers;

      d.      Whether Defendants' marketing of Class Vehicles was likely to deceive or mislead consumers;

      e.      Whether the existence of the defeat device and its consequences would be considered material by an objectively reasonable person;

      f.      Whether Defendants' conduct violates any applicable warranties; and

      g.      Whether Defendants' conduct injured Plaintiffs and the members of the proposed classes.

74.    <u>Typicality</u>.  Plaintiffs' claims are typical of the claims of the members of the proposed classes.  Plaintiffs and the class members they propose to represent purchased or leased Class Vehicles that contain the same defeat device, giving rise to substantially the same claims.  All Class members were comparably injured through Defendants' wrongful conduct as described above.

75.    <u>Adequacy</u>.  Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the other class members they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The Classes' interest will be fairly and adequately protected by Plaintiffs and their counsel.

76.    <u>Superiority</u>.  The action may be certified under Rule 23(b)(3) because common questions predominate as described above and because a class action is the best available method for the fair and efficient adjudication of this controversy.  This litigation involves technical issues that will require expert testimony and targeted discovery of sophisticated defendants, and could not practically be taken on by individual litigants.  In addition, individual litigation of class members' claims would be impracticable and unduly burdensome to the court system and has the

potential to lead to inconsistent results.  A class action presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

77.     <u>Declaratory and Injunctive Relief</u>.  In the alternative to class certification under Rule 23(b)(3), the proposed classes may be certified under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief and declaratory relief appropriate with respect to the Class as a whole.

78.     Should individual Class members be required to bring separate actions, this Court and/or courts throughout the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>COUNT ONE</u>**

**FRAUD BY CONCEALMENT**

**(On Behalf of the Nationwide Class or Alternatively the Ohio, California,**

**New York, Virginia, and Colorado Classes)**

79.     All paragraphs of the Complaint are expressly incorporated as if fully re-written and re-alleged herein.

80.     Plaintiffs bring this claim on behalf of themselves and a proposed Nationwide Class or alternatively the Ohio, California, New York, Virginia, and Colorado Classes, as defined above, against Defendants.

81.     Since at least 2013, Defendants have intentionally concealed and suppressed the material fact that it had installed an illegal "defeat device" in the Class Vehicles to either bypass or render inoperative elements of the vehicle design related to compliance with federal and state emission standards so that their vehicles emit far more pollution than allowed under federal and state law. The defeat device, by its very nature, functioned to fraudulently conceal the true facts from regulators, dealers, and consumers.

82.     In addition, Defendants, through the defeat device and their false affirmative representations, intentionally concealed and suppressed the material fact that the vehicles, if brought in compliance with federal and state emissions standards, would exhibit diminished performance and fuel economy, as compared to the performance and fuel economy promised by Defendants through their advertising and marketing.  This allowed Plaintiffs and Class members to purchase Class Vehicles without Defendants ever disclosing the defect.

83.     Defendants knew, or were reckless in not knowing, that their representations with regard to Class Vehicles' fuel efficiency, performance, and emissions that set consumers' expectations were false and that by making such false representations it was preventing Plaintiffs and Class members from further investigating the facts.

84.     Defendants intended to induce Plaintiffs and Class members to rely on their representations and purchase their vehicles, and to purchase those vehicles at a higher price than Plaintiffs and Class members would otherwise have paid.

85.     Defendants were under a duty to disclose the facts regarding the defeat devices in the Class Vehicles to Plaintiffs and Class members, based upon Defendants' superior knowledge and affirmative misrepresentations and/or omissions to the contrary.  Instead, Defendants concealed the true facts and made false representations with the intent to induce Plaintiffs and

Class members not to investigate or uncover the true facts with respect to the Class Vehicles.

86. Plaintiffs and Class members were unaware of these concealed facts, materially and justifiably relied upon the omitted facts and Defendants' representations designed to conceal them, to the detriment of Plaintiffs and Class members. They would not have acted as they did if they had known the omitted facts. Plaintiffs and Class members justifiably relied on Defendants' fraudulent concealment in that they would not have purchased their vehicles, or would not have purchased them at the price they paid, had Defendants not fraudulently concealed the defect.

87. These facts that Defendants concealed were material because their concealment suggested, falsely, that these vehicles are compliant with federal and state emissions requirements. In addition, these facts were material because whether the Class Vehicles are so compliant, whether they are "clean" or "eco" diesel vehicles, and whether they achieve the power and fuel efficiency advertised by Defendants when operating in compliance with applicable emissions standards, directly impacts the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.

88. As a result of Defendants' fraudulent concealment, Plaintiffs' and Class members' vehicles have lost significant value. Plaintiffs and Class members are thus entitled to damages in an amount to be determined at trial.

89. Because Defendants' conduct was wanton, deliberate, oppressive and malicious, or in reckless disregard of Plaintiffs' and Class members' consumer and contractual rights, Plaintiffs and Class members are entitled to an award of punitive or exemplary damages in an amount to be determined at trial.

## COUNT TWO

### VIOLATION OF THE OHIO CONSUMER SALES PRACTICE ACT

### (OHIO REV. CODE §§ 1345.01, *et seq.*)

### (On Behalf of the Ohio Class)

90.     All paragraphs of the Complaint are expressly incorporated as if fully re-written and re-alleged herein.

91.     Plaintiff Marlatt brings this Count on behalf of himself and the Ohio Class.

92.     At all times relevant to this suit, Defendants were "supplier[s]," as defined in the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01.

93.     At all times relevant to this suit, Plaintiff Marlatt and the other Ohio Class members were "consumers," as defined in the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01.

94.     At all times relevant to this suit, Plaintiff Marlatt and the other Ohio Class members purchased their Class Vehicles through "consumer transactions," as defined in the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01.

95.     As a result of placing a defective product into the stream of commerce, Defendants have breached the implied warranty in tort, which is an unfair and deceptive act, as defined in Ohio Rev. Code § 1345.09(B).

96.     Defendants have committed unfair and deceptive acts in violation of Ohio's Consumer Sales Practices Act by knowingly placing into the stream of commerce the defective Class Vehicles manufactured, designed, and marketed in such a manner as to mislead consumers, dealers, and regulators concerning their fuel efficiency, performance, and "clean" standards.

97.     Moreover, Defendants have committed an unfair, deceptive, and unconscionable

29

act by knowingly concealing the defect in their vehicles and failing to inform Plaintiff Marlatt and other Ohio Class members of this defect.

98. Further, as reflected by facts alleged in this Complaint, Defendants have made representations and/or public statements about fuel efficiency, performance, and "clean" standards regarding the Class Vehicles, that are unfair and deceptive in violation of Ohio law.

99. The Ohio Attorney General made available for public inspection prior state court decisions that have held that the acts and omissions of Defendants as detailed in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, Defendants' making and distributing false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of the defect, constitute deceptive sales practices in violation of Ohio's Consumer Sales Practices Act. These cases include, but are not limited to, the following:

      a. *Mason v. Mercedez Benz USA, LLC* (OPIF #10002382);

      b. *State ex rel. Betty D. Montgomery v. Ford Motor Co.* (OPIF #10002123);

      c. *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

      d. *Bellinger v. Hewlett-Packard Co.* (OPIF #10002077);

      e. *Borror v. MarineMax of Ohio* (OPIF #10002388);

      f. *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

      g. *Mark J. Cranford, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

      h.     *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

      i.     *Brinkman v. Mazda Motor of America* (OPIF #10001427);

      j.     *Khouri v. Don Lewis* (OPIF #100001995);

      k.     *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001524);

      l.     *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

      m.     *Brown v. Spears* (OPIF #10000403).

100.    Defendants committed these and other unfair and deceptive acts with regard to the marketing and sale of its vehicles.  Defendants are liable to Marlatt and the Ohio Class members for compensatory damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code § 1345.09.

## COUNT THREE

## BREACH OF EXPRESS WARRANTY

## (BASED ON OHIO REV. CODE § 1302.26 AND OHIO COMMON LAW)

### (On Behalf of the Ohio Class)

101.    All paragraphs of the Complaint are expressly incorporated as if fully re-written and re-alleged herein.

102.    Plaintiff Marlatt brings this Count on behalf of himself and the Ohio Class.

103.    By advertising the "green" and "clean" qualities of its diesel engines, Defendants expressly warranted to purchasers of the Class Vehicles that the Vehicles at least complied with all applicable laws and regulations relating to exhaust emissions.  Stated differently, it would be

impossible for an automobile to be "green" if it emitted more pollutants than were allowed by applicable environmental laws and regulations.

104.    Such statements became the basis of the bargain for Plaintiff Marlatt and other purchasers of the Class Vehicles because such statements are among the facts a reasonable consumer would consider material in the purchase of a vehicle.

105.    In fact, in ordinary driving conditions, the Class Vehicles did not comply with applicable environmental regulations.  As such, it was unlawful for Defendants to sell the Vehicles to the public.

106.    In addition, Defendants stated that the vehicles achieved certain fuel efficiency in terms of miles per gallon of fuel when tested in accordance with applicable EPA regulations. Those statements created an express warranty that, under EPA test conditions, the vehicle achieved the stated fuel efficiency for purposes of making apples-to-apples comparisons with other vehicles.

107.    Testing under EPA regulations presupposes that the vehicles comply with all laws and regulations applicable to automobiles, including environmental regulations.

108.    In fact, had the Class Vehicles been tested in accordance with EPA fuel efficiency standards while also complying with pollution regulations, they would have achieved significantly lower fuel efficiency than was stated on the EPA mileage sticker on the vehicle.

109.    As a result of the foregoing breaches of express warranty, Plaintiff Marlatt and other members of the Ohio Class have been damaged in that they purchased a vehicle that was unlawful to have been sold in the first instance, and, even if lawfully sold, was less valuable than what they paid for the Class Vehicles because the Vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with

applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

110.    Moreover, many of the damages flowing from these vehicles' defects cannot be resolved through the limited warranty remedy of replacement or adjustment, as Marlatt and the other Ohio Class members have already suffered incidental and consequential damages as a result of Defendants' conduct.  Also, any repair made by Defendants would not provide Marlatt and the other Ohio Class members with the benefit of their bargain because the vehicles would be subject to diminished performance and gas mileage.  Such damages are due to Defendants' failure and/or continued failure to provide an effective repair or replacement within a reasonable time, and any limitation on the remedies belonging to Marlatt and the other Ohio Class members would be insufficient to make Marlatt and the other Ohio Class members whole.

111.    Accordingly, recovery by Marlatt and the other Ohio Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Marlatt, individually and on behalf of other Ohio Class members, seeks all remedies as allowed by law.

112.    Defendants were provided notice of these issues by the EPA and CARB notices, legal complaints filed in lawsuits against Defendants (including this Complaint), and internal knowledge derived from testing and internal analysis.

113.    Finally, due to Defendants' breach of warranties as set forth in this Class Action Complaint, Marlatt and the other Ohio Class members assert an additional and/or alternative remedy, as set forth in Ohio Rev. Code § 1302.66, for a revocation of acceptance of the goods, and for a return to Marlatt and the other Ohio Class members of the purchase price of all Class Vehicles currently owned by Marlatt and the other Ohio Class members.

## COUNT FOUR

### BREACH OF IMPLIED WARRANTY IN TORT

### (BASED ON OHIO COMMON LAW)

#### (On Behalf of the Ohio Class)

114.    All paragraphs of the Complaint are expressly incorporated as if fully re-written and re-alleged herein.

115.    Plaintiff Marlatt brings this Count on behalf of the Ohio Class.

116.    Defendants manufactured, distributed, sold, imported, and/or supplied Class Vehicles in Ohio to Marlatt and the prospective Ohio Class members.

117.    These Class Vehicles contained a design defect — namely, they contained an illegal "defeat device," designed to mislead consumers, dealers, and regulators, and to provide false omissions testing results.  Further, they were marketed as "clean diesel" vehicles that possessed important characteristics that they did not in fact possess — the combination of low emission, high performance, and fuel economy that induced Marlatt and other Ohio consumers to purchase their vehicles.

118.    The alleged product defect existed at the time these FCA diesel vehicles left the hands of Defendants.

119.    Based upon this defect, Defendants have failed to meet the expectations of a reasonable consumer.  The Class Vehicles have failed their ordinary, intended use because of the "defeat device" that Defendants installed on the vehicles without consumers' knowledge. Further, because of the hidden defeat device, Class Vehicles would not pass without objection in the trade under the product description.

120.    This design defect in the Class Vehicles was the direct and proximate cause of

Plaintiff's economic damages, as well as damages incurred or to be incurred by each of the prospective Ohio Class members.

## COUNT FIVE

### FRAUD

### (BASED ON OHIO COMMON LAW)

### (On Behalf of the Ohio Class)

121.    All paragraphs of the Complaint are expressly incorporated as if fully re-written and re-alleged herein.

122.    Plaintiff Marlatt brings this Count on behalf of himself and the Ohio Class.

123.    As described above, Defendants' conduct defrauded Plaintiff Marlatt and the Class Members, intentionally leading them to believe, through affirmative misrepresentations, deliberate omissions, and suppression and concealments of material facts, that the Class Vehicles, marketed by Defendants as "clean diesel" vehicles possessed important characteristics that the vehicles in fact did not possess; namely the combination of low emissions, high performance, and fuel economy, which induced their purchases.

124.    Defendants' intentional and material misrepresentations included, among other things, their advertising, marketing materials and messages, and other standardized statements claiming the Class vehicles (a) were clean and eco-friendly and (b) combined low emissions with high performance and strong fuel economy.

125.    The foregoing misrepresentations were uniform across all members of the Ohio Class.  The same advertisements were shown to all members of the public generally and the same marketing materials were distributed to customers and potential customer, and all of the materials contained the same standardized statements relating to the Class Vehicles'

environmental friendliness, performance, and fuel economy.

126.    These representations directly contradicted the true nature and hidden design of the Class Vehicles and their actual emissions when operating under normal circumstances. Defendants knew the representations were false when they made them and intended to defraud purchasers thereby.  These representations were specifically designed to conceal the true facts with regard to the design and operation of the Class Vehicles.

127.    Defendants also had a duty to disclose, rather than affirmatively conceal and suppress, the full scope and extent of the emissions deception because: (a) Defendants had exclusive knowledge of the actual emissions in the Class Vehicles and concealment thereof; (b) the details regarding the actual emissions in the Class Vehicles and concealment thereof were known and/or accessible only to Defendants; (c) Defendants knew Marlatt and members of the Ohio Class did not know and could not reasonably discover the actual emissions in the Class Vehicles and concealment thereof; and (d) Defendants made representations about the qualities of the Class Vehicles, including statements about their performance, fuel economy, and emissions, that were misleading, deceptive, and incomplete without the disclosure of the fact that Defendants secretly designed and installed defeat device software on the Class Vehicles that was intended to conceal the vehicles' exceedingly high and illegal emission levels from governments, consumers, and the public.

128.    Defendants' concealment was likewise uniform across all members of the Ohio Class in that Defendants concealed from everyone other than Defendants, including potential customers and regulators, the true facts relating to the emission levels of the Class Vehicles.

129.    Defendants' misrepresentations and omissions designed to conceal the true facts were material in that they would affect a reasonable consumer's decision to purchase or lease a

Class Vehicle. Consumers paid a premium for the Class Vehicles precisely because they supposedly offered low emissions and fuel economy without sacrificing performance. Defendants' conduct, misrepresentations, omissions, concealment, and suppression, induced consumers to purchase or lease the Class Vehicles and directly affect both the quality and worth of the vehicles.

130. Defendants' intentionally deceptive conduct – the fraud by concealment – in addition to Defendants' affirmative misrepresentations, likewise induced the Class Vehicles' purchase by Marlatt and Class Members, and caused the resulting harm and damage to them.

131. Marlatt relied upon Defendants' misrepresentations and concealment of the true facts. Members of the Ohio Class are presumed to have relied upon Defendants' misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's purchase of the Class Vehicles.

132. As a result of Defendants' inducements, Marlatt and Ohio Class Members have sustained significant damage, including, but not limited to, lost vehicle value and diminished vehicle quality and utility. If Marlatt and Ohio Class members had known about the defeat device and the unlawful emissions at the time of acquisition, they would not have acquired the Class Vehicles, or they would have at least paid significantly less for their vehicles. Indeed, the Class Vehicles simply could not have even been marketed or sold to any reasonable consumer had the existence of the defeat device been disclosed. Defendants are therefore liable to Marlatt and Ohio Class Members in an amount to be proven at trial.

133. Defendants intentionally designed and engineered their "clean diesel" vehicles to deceive and cheat regulators and customers. Defendants touted the performance and environmental virtues of these vehicles, while knowlingly concealing and suppressing the truth

about them, for the purpose of inducing Marlatt and the Ohio Class Members to buy them. Defendants' fraud caused both the purchase and the harm.  In order to undo this harm, Defendants must repair or remediate the vehicles so that they deliver everything Defendants promised when Defendants sold them, or undertake to buy them back from Marlatt and the Ohio Class Members in terms that are just and equitable under principles of rescission, restitution, and benefit of the bargain.

134.    Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for the rights and interests of Marlatt, the public, and the environment.  Defendants' conduct thus warrants an assessment of punitive damages at the highest level allowed by applicable law, consistent with the actual harm it has caused, the reprehensibility of the conduct, and the need to punish and deter such conduct.

135.    Defendants were under a duty to disclose the facts regarding the defect in the Class Vehicles to Marlatt and the Ohio Class, based on Defendants' superior knowledge and affirmative misrepresentations and/or omissions to the contrary.

136.    Marlatt and the Ohio Class were unaware of these concealed facts, materially and justifiably relied upon the omitted facts to their detriment, and would not have acted as they did if they knew the omitted facts.  Marlatt and the other Ohio Class members justifiably relied on Defendants' fraudulent concealment in that they would not have purchased their vehicles, or would not have purchased them at the price they paid, had Defendants not fraudulently concealed the defect.

137.    Because Defendants knowingly misrepresented and/or concealed material facts regarding the Class Vehicles, Marlatt and the Ohio Class members have directly and proximately sustained damages by purchasing Class Vehicles at prices that did not reflect the defect in the

vehicles in an amount to be proven at trial.

138.    In addition to compensatory damages, Marlatt and the other Ohio Class members are entitled to punitive damages because Defendants' conduct was fraudulent, gross, oppressive, and/or reckless, in an amount to be proven at trial.

## COUNT SIX

## FRAUD BY OMISSION

## (BASED ON OHIO COMMON LAW)

### (On Behalf of the Ohio Class)

139.    All paragraphs of the Complaint are expressly incorporated as if fully re-written and re-alleged herein.

140.    Plaintiff Marlatt brings this Count on behalf of himself and the Ohio Class.

141.    Defendants were aware of the above-described defects before, during, and after they began distributing the vehicles in question.

142.    Defendants, as manufacturers and distributors of consumer products and motor vehicles, have a duty to disclose such known defects to federal authorities, Marlatt, and members of the Ohio Class.

143.    Defendants, through their omissions, failed to disclose the alleged defects even though they knew about the defects before, during, and after they started distributing these vehicles.  Rather than repeat the relevant facts here, Marlatt's fraud by omission claim relies on the same factual allegations as Count Five and those alleged throughout this Complaint.

144.    Marlatt reasonably relied on Defendants to perform their duty to disclose the known defects either before his purchase of the vehicle, at the time of sale, or at one of any innumerable times after the sale.

145.    The existence of the defects was material to Marlatt and other Ohio Class members because, had they known about the defects they would not have purchased their Class Vehicles or would  not have purchased them for the amount that they actually paid.

146.    As a direct and proximate cause of Defendants' omissions, Marlatt and the other Ohio Class members purchased FCA vehicles that do not conform with representations concerning fuel efficiency, performance, or environmental cleanliness, that they would not have purchased at all, or that they would not have purchased for the same amount, had the defect been disclosed to them.  Consequently, they have incurred damages in an amount to be proven at trial.

## COUNT SEVEN

### NEGLIGENCE

### (BASED ON OHIO COMMON LAW)

### (On Behalf of the Ohio Class)

147.    All paragraphs of the Complaint are expressly incorporated as if fully re-written and re-alleged herein.

148.    Plaintiff Marlatt brings this Count on behalf of the Ohio Class.

149.    Defendants negligently designed and manufactured the Class Vehicles subject to this lawsuit.

150.    Defendants owed Marlatt and the other Ohio Class members a duty to design and manufacture its vehicles in such a way as to ensure that they would not contain defects – such as a hidden, illegal defeat device that affected fuel efficiency, performance, and a lack of environmental cleanliness – and a duty to take precautions against allowing the distribution of these defective vehicles to hundreds of thousands of consumers.

151.    Discovery will reveal additional information from Defendants regarding the

design and manufacturing process to support the conclusion that Defendants' design and manufacturing of its Class Vehicles constitutes negligent design and/or manufacturing.

152. As a direct and proximate result of Defendants' negligence, Marlatt and the other Ohio Class members have sustained damages.

## COUNT EIGHT

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)

### (On Behalf of the California Class)

153. Plaintiff Bruce and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

154. Plaintiff Bruce brings this claim on behalf of himself and the California Class against Defendants.

155. Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

156. Defendants' acts and practices constitute unlawful business practices, as discussed elsewhere in this Complaint, in that they violate section 203(a)(3)(B) of the Clean Air Act (CAA), 42 U.S.C. § 7522(a)(3)(B) and its implementing regulations; section 203(a)(l) of the CAA, 42 U.S.C. § 7522(a)(l) and its implementing regulations; California law governing vehicle emissions; California's Consumers Legal Remedies Act; California's False Advertising Law; and the Song-Beverly Consumer Warranty Act.

157. Defendants' acts and practices constitute unfair practices in that (i) they are unethical, unscrupulous, and substantially injurious to consumers; (ii) any legitimate utility of

Defendants' conduct is outweighed by the harm to consumers; (iii) the injury is not one that consumers reasonably could have avoided; and/or (iv) the conduct runs afoul of the policies underlying the federal Clean Air Act, its implementing regulations, and California emissions standards, which seek to minimize harmful emissions and provide consumers with accurate information about the pollutant levels emitted by vehicles placed in the stream of commerce.

158.    Defendants' acts and practices constitute fraudulent practices in that they are likely to deceive a reasonable consumer, who would not have purchased a Class Vehicle, or would have paid substantially less for a Class Vehicle, had FCA adequately disclosed that the Class Vehicles failed to comply with federal and California emissions standards.

159.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and the proposed California Class have suffered injury in fact and lost money or property, in that they bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. In addition, Plaintiff and the proposed Class will incur additional fuel costs, and a diminution in the performance of their respective Class Vehicles, if and when their Class Vehicles are altered in order to bring them into compliance with federal and state emissions standards. Meanwhile, Defendants have sold or leased more Class Vehicles than they otherwise could have and charged inflated prices for Class Vehicles, thereby unjustly enriching themselves.

160.    Plaintiff and the proposed California Class are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to Defendants because of their unfair and deceptive practices, and such other orders as may be necessary to prevent the future use of these practices.

## COUNT NINE

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**

**(CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)**

**(On Behalf of the California Class)**

161.    Plaintiff Bruce and the California Class incorporate by reference all allegations of the preceding and succeeding paragraphs as though fully set forth herein.

162.    Plaintiff Bruce brings this claim on behalf of himself and the California Class against Defendants.

163.    California's False Advertising Law prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. This prohibition extends to advertising which is false, and also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

164.    Through advertising, marketing, and other publications described at length above, Defendants disseminated, or caused to be disseminated, in California and nationally, statements regarding the Class Vehicles which were false or misleading, including that these vehicles are "Clean Diesel" vehicles when, in fact, they did not meet federal or California emissions standards.

165.    Defendants' misrepresentations regarding the Class Vehicles' emissions compliance, their performance, and their fuel efficiency were material and likely to deceive reasonable consumers such as Plaintiff and the California Class.

166.    Defendants knew or should have known these statements were false and misleading and would deceive consumers, including Plaintiff and the California Class.

167.    Plaintiff and the California Class have suffered injury-in-fact, including the loss

of money and property, as a result of Defendants' misrepresentations, which are unfair, deceptive, untrue, or misleading in violation of the False Advertising Law. Plaintiff and the California Class would not have purchased or leased the Class Vehicles had they known of the deceptive nature of Defendants' misrepresentations and omissions, or they would have paid less for the Class Vehicles. Also, Plaintiff and the proposed Class will incur additional fuel costs, and a diminution in the performance of their respective Class Vehicles, if and when their Class Vehicles are altered in order to bring them into compliance with federal and state emissions standards.

168.    Plaintiff and the proposed California Class are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to Defendants because of their deceptive practices and an order requiring Defendants to adequately disclose and repair the defect.

## <u>COUNT TEN</u>

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE §§ 1750, *et seq.*)
### (On Behalf of the California Class)

169.    Plaintiff Bruce and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

170.    Plaintiff Bruce brings this claim on behalf of himself and the California Class against Defendants.

171.    Defendants violated the Consumers Legal Remedies Act (CLRA), California Civil Code §§ 1770(a)(2), (3), (5), (7), (9), and (16), by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with transactions—

namely, the sale of Class Vehicles to Plaintiff and the proposed California Class—that were intended to, and did, result in the sale and lease of goods to consumers.  In connection with the sale or lease of Class Vehicles to Plaintiff and California Class members, Defendants concealed and failed to disclose that Class Vehicles do not meet federal and state emissions standards and that they achieve their performance and fuel efficiency as a result of an illegal defeat device. These facts are material to a reasonable consumer in that they negatively affect Class Vehicles' environmental emissions and market value.  If and when the Class Vehicles are altered to bring them into compliance with federal and state emissions standards, Plaintiffs and the proposed Class will incur additional fuel costs, and a diminution in the performance of their respective Class Vehicles. Defendants had a duty to disclose these facts to consumers because they had exclusive knowledge of those facts, which were not known or reasonably knowable by the Plaintiff and proposed Class; because it actively concealed these material facts from Plaintiff and the proposed Class; and because it made partial representations regarding Class Vehicles' emissions and compliance with federal and state emissions law, while at the same time suppressing material facts regarding the vehicle's emissions.

172.    As a direct and proximate result of Defendants' conduct, Plaintiff and California Class members have been harmed. Plaintiff and the other California Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Meanwhile, Defendants have sold more Class Vehicles than they otherwise could have and charged inflated prices for Class Vehicles, thereby unjustly enriching themselves.

173.    Plaintiff and the proposed Class are entitled to equitable relief and a declaration that Defendants' conduct violates the Consumer Legal Remedies Act.

45

174.     Plaintiff disclaims any request for monetary relief, including punitive damages, under the Consumer Legal Remedies Act at this time but reserve the right to seek such relief after providing Defendants with the notice required by the Act.

## COUNT ELEVEN

### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT

### BREACH OF IMPLIED WARRANTY

### (CAL. CIV. CODE §§ 1791, *et seq.*)

### (On Behalf of the California Class)

175.     Plaintiff Bruce and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

176.     Plaintiff Bruce brings this claim on behalf of himself and the California Class against Defendants.

177.     Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

178.     Defendants are "manufacturer[s]" within the meaning of Cal. Civ. Code § 1791(j).

179.     Defendants impliedly warranted to Plaintiff and the California Class that Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

180.     Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)     Pass without objection in the trade under the contract description.

(2)     Are fit for the ordinary purposes for which such goods are used.

(3)     Are adequately contained, packaged, and labeled.

(4)  Conform to the promises or affirmations of fact made on the container or label.

181.  Class Vehicles would not pass without objection in the automotive trade because the Class Vehicles do not conform in material respects with federal and California emissions standards, were sold with an illegal defeat device, as described above, and emit pollutants such as NOx by a factor of 10 to 40 times above the EPA compliant levels.

182.  As described above, the Class Vehicles are not fit for ordinary purposes for which such goods are used.

183.  Class Vehicles are not adequately labeled because the labeling misrepresents that the vehicles are compliant with federal and California emissions standards or fails to disclose such non-compliance.

184.  Defendants' conduct deprived Plaintiff and the proposed California Class of the benefit of their bargain and has caused Class Vehicles to be worth less than what Plaintiff and other proposed California Class members paid.

185.  As a direct and proximate result of Defendants' breach of its duties, proposed California Class members received goods whose condition substantially impairs their value. Plaintiff and the proposed California Class have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

186.  Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations, as a result of Defendants' conduct described herein.

187.  Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and the proposed California

Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles, and are also entitled to their attorney fees and costs.

## COUNT TWELVE

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

### (N.Y. GEN. BUS. LAW § 349)

### (On Behalf of the New York Class)

188.    Plaintiff Hornberger and the New York Class incorporate by reference the allegations contained in the preceding and succeeding paragraphs as though fully set forth herein.

189.    Plaintiff Hornberger brings this claim on behalf of himself and the New York Class against Defendants.

190.    Plaintiff Hornberger and the New York Class members are "persons" within the meaning of the New York General Business Law ("NYGBL"), N.Y. Gen. Bus. Law § 349(h).

191.    Defendants are "person[s]," "firm[s]," "corporation[s]," or "association[s]" within the meaning of the NYGBL.

192.    The NYGBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).  Defendants' conduct directed toward consumers, as described herein, constitutes "deceptive acts or practices" within the meaning of the NYGBL.

193.    Defendants engaged in unlawful deceptive acts or practices by intentionally concealing and failing to disclose facts about the quality of the Class Vehicles that would be material to a reasonable consumer.  In connection with the sale or lease of Class Vehicles to Plaintiff and New York Class members, Defendants concealed and failed to disclose that Class

Vehicles do not meet federal and state emissions standards and that they achieve their performance and fuel efficiency as a result of an illegal defeat device.  These facts are material to a reasonable consumer in that they negatively affect Class Vehicles' environmental emissions and market value.  Plaintiff and New York Class members paid a premium for EcoDiesel technology on account of Defendants' materially misleading practices, as described herein, and thus did not receive the full value of their purchases.  If and when the Class Vehicles are altered to bring them into compliance with federal and state emissions standards, Plaintiffs and the proposed Class will incur additional fuel costs, and a diminution in the performance of their respective Class Vehicles. Defendants had a duty to disclose these facts to consumers because they had exclusive knowledge of those facts, which were not known or reasonably knowable by the Plaintiff and proposed Class; because they actively concealed these material facts from Plaintiff and the proposed Class; and because they made partial representations regarding Class Vehicles' emissions and compliance with federal and state emissions law, while at the same time suppressing material facts regarding the vehicle's emissions.

194.    As a direct and proximate result of Defendants' conduct, Plaintiff Hornberger and New York Class members have been harmed. Plaintiff and the other New York Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value.

195.    Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiff and the New York Class seek all just and proper remedies including, but not limited to, actual damages or $50, whichever is greater, up to $1,000 in treble damages, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendants' unfair and/or deceptive acts and practices, and any other relief available under the NYGBL.

## COUNT THIRTEEN

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §350

### (N.Y. GEN. BUS. LAW § 350)

### (On Behalf of the New York Class)

196.    Plaintiff Hornberger and the New York Class incorporate by reference all allegations of the preceding and succeeding paragraphs as though fully set forth herein.

197.    Plaintiff Hornberger brings this claim on behalf of himself and the New York Class against Defendants.

198.    Defendants were and are engaged in the "conduct of business, trade or commerce" within the meaning of the New York General Business Law ("NYGBL"), NY. Gen. Bus. Law § 350.

199.    Section 350 of the NYGBL makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . ." N.Y. Gen. Bus. Law § 350-a(1).

200.    Through advertising, marketing, and other publications described at length above, Defendants disseminated, or caused to be disseminated, in New York and nationally, statements regarding the Class Vehicles which were false or misleading, including that these vehicles are "Clean Diesel" vehicles when, in fact, they did not meet applicable emissions standards.

201.    Defendants' misrepresentations and omissions regarding the Class Vehicles' emissions compliance, their performance, and their fuel efficiency were material and likely to deceive reasonable consumers such as Plaintiff and the New York Class.

202.    Defendants knew or should have known these statements were false and misleading and would deceive consumers, including Plaintiff and the New York Class.

203.    Plaintiff and the New York Class have suffered injury-in-fact, including the loss of money and property, as a result of Defendants' misrepresentations and omissions, which are "misleading in a material respect" in violation of the NYGBL.  NY. Gen. Bus. Law § 350-a(1). Plaintiff and the New York Class would not have purchased or leased the Class Vehicles had they known of the deceptive nature of Defendants' misrepresentations and omissions, or they would have paid less for the Class Vehicles.  Also, Plaintiff and the proposed Class will incur additional fuel costs, and a diminution in the performance of their respective Class Vehicles, if and when their Class Vehicles are altered in order to bring them into compliance with federal and state emissions standards.

204.    Under section 350-e, Plaintiff Hornberger and the New York Class seek monetary relief against Defendants measured as (1) actual damages in an amount to be determined at trial, and (2) statutory damages in the amount of $500 for each member of the New York Class. Because Defendants' conduct was committed willfully and knowingly, New York Class members are entitled to recover three times actual damages, up to $10,000, for each member of the Class.

205.    Plaintiff Hornberger and the New York Class also seek an order enjoining Defendants' unfair, unlawful and/or deceptive practices; attorneys' fees; and any other relief available under section 350 of the NYGBL.

## COUNT FOURTEEN

**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**

**(VA CODE §§ 59.1-196, *et seq.*)**

**(On Behalf of the Virginia Class)**

206. Plaintiff Cook and the Virginia Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

207. Plaintiff Cook brings this claim on behalf of himself and the Virginia Class against Defendants.

208. Defendants are "supplier[s]" as defined by Va. Code § 59.1-198. The transactions between Plaintiff and the Virginia Class on the one hand and Defendants on the other, are "consumer transaction[s]" as defined by Va. Code § 59.1-198 because Plaintiff and Virginia Class members purchased or leased Class Vehicles primarily for personal, family or household purposes.

209. The Virginia Consumer Protection Act prohibits: "(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; … (5) Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits; (6) Misrepresenting that goods or services are of a particular standard, quality, grade, style or model; … (8) Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised; … [and] (14) Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code §59.1-200(A).

210. In connection with the sale or lease of Class Vehicles to Plaintiff Cook and Virginia Class members, Defendants concealed and failed to disclose that Class Vehicles do not

meet federal and state emissions standards and that they achieve their performance and fuel efficiency as a result of an illegal defeat device.  These facts are material to a reasonable consumer in that they negatively affect Class Vehicles' environmental emissions and market value.  If and when the Class Vehicles are altered to bring them into compliance with federal and state emissions standards, Plaintiff and the Virginia Class will incur additional fuel costs, and a diminution in the performance of their respective Class Vehicles.  Defendants had a duty to disclose these facts to consumers because they had exclusive knowledge of those facts, which were not known or reasonably knowable by the Plaintiff and proposed Class; because it actively concealed these material facts from the Plaintiff and the proposed Class; and because it made partial representations regarding Class Vehicles' emissions and compliance with federal and state emissions law, while at the same time suppressing material facts regarding the vehicle's emissions.

211.    As a direct and proximate result of Defendants' conduct, Plaintiff Cook and Virginia Class members have been harmed. Plaintiff and the other Virginia Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Meanwhile, Defendants have sold more Class Vehicles than they otherwise could have and charged inflated prices for Class Vehicles, thereby unjustly enriching themselves.

212.    Plaintiff and the Virginia Class seek actual damages or $500, whichever is greater. Va. Code § 59.1-204.  If the violations are found to be willful, Plaintiff and the Virginia class are entitled to three times the actual damages sustained or $1,000, whichever is greater.  *Id.*

213.    Plaintiff also seeks punitive damages, attorneys' fees, and any other just and proper relief under Va. Code § 59.1-204.

## COUNT FIFTEEN

**BREACH OF EXPRESS WARRANTY**

**(VA CODE § 8.2-313)**

**(On Behalf of the Virginia Class)**

214.     Plaintiff Cook and the Virginia Class incorporate by reference all allegations of the preceding and succeeding paragraphs as though fully set forth herein.

215.     Plaintiff Cook brings this claim on behalf of himself and the Virginia Class against Defendants.

216.     Plaintiff Cook and the Virginia Class are "buyer[s]," and Defendants are "seller[s]" within the meaning of Va. Code § 8.2-103.

217.     The Class Vehicles are "goods" within the meaning of Va. Code § 8.2-105.

218.     Defendants made several representations, descriptions, and promises to Plaintiff and Virginia Class members regarding the performance and emission controls of their vehicles. Defendants were required to make two types of express warranties under the Clean Air Act: a "Performance Warranty" and a "Design and Defect Warranty."  The Performance Warranty applies to required repairs during the first two years or 24,000 miles if a vehicle fails an emissions test with certain components being covered for up to eight years or 80,000 miles. The Design and Defect Warranties required by the EPA cover repairs to the emission system and related parts for two years or 24,000 miles with certain major components being covered for up to eight years or 80,000 miles.

219.     These warranties were false and misleading, because Defendants had installed defeat devices in Class Vehicles, and therefore knew that the emission systems contained defects.

220.     Plaintiff Cook and Virginia Class members reasonably relied on Defendants'

representations and express warranties concerning emissions when purchasing or leasing their vehicles.  However, their vehicles did not perform as warranted because defeat devices installed by Defendants caused them to pollute at levels that exceed applicable emissions standards. Accordingly, Defendants breached their express warranties.

221.    Defendants were provided notice of these issues and other related defects through numerous complaints made to it and the relevant governmental entities, legal complaints filed in lawsuits against Defendants (including this Complaint), and internal knowledge derived from testing and internal analysis.

222.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Cook and Virginia Class members are entitled to an award of damages, in an amount to be proven at trial.

<u>**COUNT SIXTEEN**</u>

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(VA CODE § 8.2-314)**

**(On Behalf of the Virginia Class)**

223.    Plaintiff Cook and the Virginia Class incorporate by reference all allegations of the preceding and succeeding paragraphs as though fully set forth herein.

224.    Plaintiff Cook brings this claim on behalf of himself and the Virginia Class against Defendants.

225.    Plaintiff Cook and members of the Virginia Class are "buyer[s]" within the meaning of Va. Code § 8.2-103(1)(a), and Defendants are "merchants" within the meaning of Va. Code § 8.2-104.

226.    The Class Vehicles are "goods" within the meaning of Va. Code § 8.2-105.

227.    Va. Code § 8.2-314(2) states: "Goods to be merchantable must … at least":

    (1)    Pass without objection in the trade under the contract description.

    (2)    Be fit for the ordinary purposes for which such goods are used.

    (3)    Be adequately contained, packaged, and labeled as the agreement may require.

    (4)    Conform to the promises or affirmations of fact made on the container or label.

228.    Class Vehicles would not pass without objection in the automotive trade because the Class Vehicles do not conform in material respects with federal and state emissions standards, were sold with an illegal defeat device, as described above, and emit pollutants such as NOx above EPA compliant levels.

229.    As described above, the Class Vehicles are not fit for ordinary purposes for which such goods are used.

230.    Class Vehicles are not adequately labeled because the labeling misrepresents that the vehicles are compliant with federal and state emissions standards or fails to disclose such non-compliance.

231.    Defendants' conduct deprived Plaintiff Cook and the proposed Virginia Class of the benefit of their bargain and has caused Class Vehicles to be worth less than what Plaintiff and other Virginia Class members paid.

232.    Plaintiff Cook and each of the other Virginia Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff and the other New York Class members, on the other hand.

233.     Plaintiff and Virginia Class members are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of Defendants' implied warranties.  FCA dealerships are not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

234.     As a direct and proximate result of Defendants' breach of its duties, Virginia Class members received goods whose condition substantially impairs their value.  Plaintiff and the proposed Virginia Class have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

235.     Plaintiff and the Virginia Class are entitled to damages in an amount to be proven at trial.

## COUNT SEVENTEEN

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT

### (COLO. REV. STAT. §§ 6-1-101, *et seq.*)

#### (On Behalf of the Colorado Class)

236.     Plaintiff Lotus Summit Trading LLC and the Colorado Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

237.     Plaintiff Lotus Summit Trading LLC brings this claim on behalf of itself and the Colorado Class against Defendants.

238.     Plaintiff Lotus Summit Trading LLC and members of the Colorado Class are "consumer[s]" for the purpose of C.R.S. § 6-1-113(1)(a), who purchased or leased Class Vehicles.

239.     Defendants are "person[s]" within the meaning of C.R.S. § 6-1-102(6).

240. A person engages in a deceptive trade practice under the Colorado Consumer Protection Act when a person: "(b) Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; (c) Knowingly makes a false representation as to affiliation, connection, or association with or certification by another; … (e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; … (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; … (i) Advertises goods, services, or property with intent not to sell them as advertised; … (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." C.R.S. § 6-1-105(1).

241. Defendants FCA and Fiat Chrysler are among the largest automakers in the world. Defendants engage in commerce throughout the United States, including in Colorado, by advertising, distributing, leasing, and selling motor vehicles.

242. In the course of Defendants' business of selling and/or leasing Class Vehicles to Plaintiff and Colorado Class members, Defendants concealed and failed to disclose that Class Vehicles do not meet federal and state emissions standards and that they achieve their performance and fuel efficiency as a result of an illegal defeat device. These facts are material to a reasonable consumer in that they negatively affect Class Vehicles' environmental emissions and market value. If and when the Class Vehicles are altered to bring them into compliance with

federal and state emissions standards, Plaintiff and the Colorado Class will incur additional fuel costs, and a diminution in the performance of their respective Class Vehicles.  Defendants had a duty to disclose these facts to consumers because they had exclusive knowledge of those facts, which were not known or reasonably knowable by the Plaintiff and proposed Class; because it actively concealed these material facts from the Plaintiff and the proposed Class; and because it made partial representations regarding Class Vehicles' emissions and compliance with federal and state emissions law, while at the same time suppressing material facts regarding the vehicle's emissions.  Defendants' deceptive and unfair acts and practices were made in the course of Defendants' business.

243.    Defendants' violations present a continuing risk to Plaintiff and Colorado Class members, as well as to the general public.  Defendants continue to mislead consumers by advertising, distributing, selling, and leasing FCA EcoDiesel vehicles with defeat devices. Defendants' deceptive and unfair acts and practices complained of herein affect the public interest.

244.    Plaintiff Lotus Summit Trading LLC and Colorado Class members have suffered injury in fact to a legally protected interest.  Plaintiff and the other Colorado Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Meanwhile, Defendants have sold more Class Vehicles than they otherwise could have and charged inflated prices for Class Vehicles, thereby unjustly enriching themselves.

245.    Plaintiff and Colorado Class members have suffered these harms as a direct and proximate result of Defendants' deceptive and misleading conduct, as described herein.

246.    Pursuant to C.R.S. § 6-1-113, Plaintiff and the Colorado Class seek monetary

relief against Defendants measured as the greater of (a) actual damages in an amount to be proven at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount $500 for Plaintiff and each Colorado Class member.

247.    Plaintiff and the Colorado Class also seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado Consumer Protection Act.

**COUNT EIGHTEEN**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(COLO. REV. STAT. § 4-2-314)**

**(On Behalf of the Colorado Class)**

248.    Plaintiff Lotus Summit Trading LLC and the Colorado Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

249.    Plaintiff Lotus Summit Trading LLC brings this claim on behalf of itself and the Colorado Class against Defendants.

250.    Plaintiff Lotus Summit Trading LLC and members of the Colorado Class are "buyer[s]" within the meaning of C.R.S. § 4-2-103(1)(a), and Defendants are "merchants" within the meaning of C.R.S. § 4-2-104(1).

251.    C.R.S. § 4-2-314(2) states: "Goods to be merchantable must … at least":

(1)    Pass without objection in the trade under the contract description.

(2)    Be fit for the ordinary purposes for which such goods are used.

(3)    Be adequately contained, packaged, and labeled as the agreement may require.

(4)    Conform to the promises or affirmations of fact made on the container or label.

252.     Class Vehicles would not pass without objection in the automotive trade because the Class Vehicles do not conform in material respects with federal and state emissions standards, were sold with an illegal defeat device, as described above, and emit pollutants such as NOx above EPA compliant levels.

253.     Based upon their contract description, the Class Vehicles are not fit for ordinary purposes for which such goods are used.

254.     Class Vehicles are not adequately labeled because the labeling misrepresents that the vehicles are compliant with federal and state emissions standards or fails to disclose such non-compliance.

255.     Defendants' conduct deprived Plaintiff Lotus Summit Trading LLC and the proposed Colorado Class of the benefit of their bargain and has caused Class Vehicles to be worth less than what Plaintiff and other Colorado Class members paid.

256.     To the extent required by Colorado law, if at all, Defendants had notice of the breach within a reasonable time after discovery of the breach by, including but not limited to, the filing of this lawsuit.

257.     As a direct and proximate result of Defendants' breach of its duties, Colorado Class members received goods whose condition substantially impairs their value.  Plaintiff and the proposed Colorado Class have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

258.     Plaintiff and the Colorado Class are entitled to damages in an amount to be proven at trial.

## **TOLLING**

259.     Any applicable statute of limitations that might otherwise bar any class member's

claims is tolled by Defendants' knowing and active concealment of the defeat devices in Class Vehicles.  Defendants kept Plaintiffs and the members of the proposed Classes ignorant of vital information essential to the pursuit of their claims.  Class members could not reasonably have discovered that their vehicles contained defeat devices prior to the EPA's Notice of Violation on January 12, 2017.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

a.    For an order certifying the proposed classes and Plaintiffs' counsel to represent the classes;

b.    For an order requiring Defendants to provide replacement vehicles, buy back Class Vehicles, or otherwise, free of charge, remove the defeat devices from Class Vehicles, ensure that Class Vehicles comply with applicable emission standards, and otherwise ensure that Class Vehicles conform to promised performance and fuel economy guarantees;

c.    For an order awarding Plaintiffs and class members actual, statutory, punitive, or any other form of damages provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

d.    For an order awarding Plaintiffs and class members restitution, disgorgement or other equitable relief provided by law or as the Court deems proper, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

e.    For an order awarding Plaintiffs and class members pre-judgment and post-judgment interest;

f.     For an order awarding Plaintiffs and class members reasonable attorney fees and costs of suit, including expert witness fees; and

g.     For an order awarding such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so triable under the law.

Respectfully submitted,

*/s/ Mark H. Troutman*
Mark H. Troutman (0076390)
*Trial Attorney*

Gregory M. Travalio (0000855)
Shawn K. Judge (0069493)
**ISAAC WILES BURKHOLDER & TEETOR, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Telephone:    (614) 221-2121
Facsimile:    (614) 365-9516
mtroutman@isaacwiles.com
gtravalio@isaacwiles.com
sjudge@isaacwiles.com

Eric H. Gibbs (*pro hac vice* motion to be filed)
Andre M. Mura (*pro hac vice* motion to be filed)
Shane D. Howarter (*pro hac vice* motion to be filed)
**GIRARD GIBBS LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:    (510) 350-9700
Facsimile:    (510) 350-9701
ehg@classlawgroup.com
amm@classlawgroup.com
sdh@classlawgroup.com

*Attorneys for Plaintiffs*